IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| ARCELIA GLASS and LEON GLASS, )<br>Co-guardians and Co-conservators for )<br>RAYMOND JASON HENSLEY, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>ANDREW M. SAUL, )<br>Commissioner of Social Security, )<br>)<br>Defendant. )<br>_____ ) | CIVIL ACTION<br><br>No. 20-2230-KHV |

## MEMORANDUM AND ORDER

Arcelia Glass and Leon Glass bring this action on behalf of plaintiff Raymond Jason Hensley, who appeals the final decision of the Commissioner of Social Security to deny disability and disability insurance benefits under Title II of the Social Security Act ("SSA"), 42 U.S.C. §§ 401-34. For reasons stated below, the Court reverses the decision of the Commissioner and remands with directions that the Commissioner award benefits.

## Procedural Background

On July 1, 2016, plaintiff filed disability and disability insurance applications with the Social Security Administration. He alleged a disability onset date of April 18, 2016. His benefit application was denied initially and on reconsideration. The Commissioner denied plaintiff's benefit application. On September 24, 2018, an administrative law judge ("ALJ") concluded that plaintiff was not under a disability as defined in the SSA and was not entitled to benefits. See Transcript Of Administrative Record ("Tr.") (Doc. #14) filed December 7, 2018 at 15–25. On January 2, 2019, the Appeals Council denied plaintiff's request for review. Tr. 1–3. Plaintiff appealed the final decision of the Commissioner to this Court, which remanded the case on the

Commissioner's unopposed motion. Tr. 535. On a subsequent disability application, Disability Determination Services ("DDS") concluded that since September 26, 2018 (the day after the initial ALJ decision), plaintiff has been disabled. On March 5, 2020, however, after a hearing, the ALJ concluded that between April 14, 2016 and September 25, 2018, plaintiff was not disabled and again was not entitled to benefits. Tr. 447–59. The decision of the ALJ stands as the final decision of the Commissioner. See 42 U.S.C. § 405(g).

## Factual Background

The following is a brief summary of the factual record.

Plaintiff is 51 years old. Until April 18, 2016, he worked as an appraiser, courier and auditor. Since that time, plaintiff has not worked or engaged in substantial gainful activity.

**I.  Medical Evidence**

On May 3, 2016, plaintiff saw Fernando Rosso, M.D., who diagnosed major depressive disorder with moderate to severe anxious distress and alcohol use disorder. On May 24, 2016, Dr. Rosso noted that plaintiff continued to feel very depressed and had feelings of hopelessness, and that his anxiety was reaching agoraphobic level, i.e. an anxiety level associated with irrational fear of leaving familiar settings and often associated with panic attacks. Stedman's Medical Dictionary (27th ed. 2000) at 37.

On June 11, 2016, plaintiff was found unresponsive on the side of the road. The next day, after he went to the emergency room, doctors diagnosed him with acute psychosis, rhabdomyolysis, acute schizophrenia and elevated creatine phosphokinase.[1] On June 16, 2016,

---

[1]  Psychosis refers to a mental and behavioral disorder causing gross distortion or disorganization of a person's mental capacity, affective response and capacity to recognize reality, communicate and relate to others. Stedman's Medical Dictionary at 1478. Rhabdomyolysis is an acute, potentially fatal disease of skeletal muscle that entails destruction of muscle. Id. at 1564.

(continued . . .)

plaintiff transferred to an inpatient psychiatric unit. Doctors diagnosed plaintiff with schizoaffective disorder (bipolar type), alcohol dependence in remission, generalized anxiety disorder, mixed personality traits and a global assessment of functioning ("GAF") of 40 to 50.[2] After 11 days, doctors discharged plaintiff and prescribed a variety of psychotropic medications.

On July 11, 2016, Douglas Geenens, DO, who treated plaintiff for various psychiatric conditions for some 20 years, conducted an evaluation. He noted that plaintiff showed hyperactive behavior with constant movement, an aloof attitude, impaired attention and concentration, decreased memory, paucity of speech, rigid thought process with delusions and some paranoia, euthymic mood with flat and constricted affect, and poor insight and judgment. Dr. Geenens diagnosed schizoaffective disorder, panic disorder with agoraphobia and a GAF of 40.

From July of 2016 through September of 2018, Dr. Geenens saw plaintiff for monthly psychiatric visits. During this period, plaintiff took a variety of psychotropic medications and Dr. Gennens consistently assessed schizoaffective disorder and panic disorder with agoraphobia.

---

[1](. . . continued)
Schizophrenia is a disturbance that lasts for at least six months and includes at least one month of active phase symptoms, i.e. two or more of the following: delusions, hallucinations, disorganized speech, grossly disorganized or catatonic behavior, or other similar negative symptoms. American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders (4th ed. 2000) ("DSM-IV") at 298. Creatine phosphokinase is an enzyme catalyzing the conversion of a proenzyme to an active enzyme. Stedman's Medical Dictionary at 950.

[2] Schizoaffective disorder (bipolar type) is an uninterrupted period of illness which, at some point, the patient has a manic or mixed episode concurrent with symptoms for schizophrenia while a major depressive episode may also occur. DSM-IV at 319–21. The GAF is a subjective determination based on a scale of 1 to 100 of "the clinician's judgment of the individual's overall level of functioning." Langley v. Barnhart, 373 F.3d 1116, 1123 (10th Cir. 2004) (quoting DSM-IV at 32). A GAF score between 41 and 50 indicates serious symptoms or "any serious impairment in social, occupational, or school functioning," such as having no friends or being unable to keep a job. DSM-IV at 34. A GAF score between 31 and 40 indicates some impairment in reality testing or communication or "major impairment in several areas, such as work or school, family relations, judgment, thinking or mood." Id.

In September of 2016, Dr. Geenens submitted a letter in support of plaintiff's claim for disability. He noted that plaintiff had schizoaffective disorder (bipolar type) and panic disorder with agoraphobia. Dr. Geenens noted that plaintiff had had symptoms for some 20 years with recurrent periods of inability to function for weeks, months and years. Dr. Geenens stated that given plaintiff's long history of disease and ongoing problems with functioning, his mental illness would interfere with gainful employment and overall day-to-day living for the rest of his life.

In September of 2017, Dr. Geenens again submitted a letter in support of plaintiff's claim. He noted that plaintiff suffered from chronic mental illness, and had marked limitations in his ability to function—including disorganized and psychotic thinking, inability to interact with others and limited ability to adapt and care for himself. Dr. Geenens assessed that plaintiff had a GAF of 45.

On February 15, 2018, Dr. Geenens completed a mental residual functional capacity assessment. Dr. Geenens opined that plaintiff had remained unemployed for the past 22 months because of psychiatric symptoms including psychosis, paranoia, severe anxiety and agitation. Dr. Geenens noted that plaintiff remained minimally functional across most domains.

On October 13, 2018, based on plaintiff's psychiatric records of some 20 years and extensive interviews with plaintiff's mother and stepfather, Dr. Geenens completed a Guardianship Examination and Evaluation. He noted that plaintiff had recurrent psychotic episodes and could barely leave home because of anxiety and psychosis. Dr. Geenens opined that plaintiff did not have the capacity to meet essential needs for physical health, safety or welfare or manage his estate, and that for health and safety reasons, he should not participate in guardianship proceedings.

On September 7, 2016, Dr. Raphael Smith, Psy.D., a non-examining, non-treating psychological consultant for DDS, opined that plaintiff had only moderate restrictions of activities

of daily living; moderate difficulties maintaining social functioning; moderate difficulties maintaining concentration, persistence or pace; and no episodes of decompensation. Dr. Smith opined that despite plaintiff's limitations, he (1) has adequate ability to carry out simple work instructions and sustain an ordinary routine without special supervision or accommodations for simple tasks, (2) could interact adequately with peers and supervisors in a work setting where social interaction was not a primary job requirement and (3) could adapt to general and usual changes in the work setting.

In the fall of 2016, Fredric Simowitz, M.D. and Rene Staudacher, D.O., both non-examining, non-treating medical consultants for DDS, opined that plaintiff had no severe physical impairments.

On February 6, 2017, Scott Schafer, Ph.D, a non-examining, non-treating medical consultant for DDS, opined that plaintiff had only moderate limitations in ability to understand, remember or apply information, interact with others, maintain concentration and persist or maintain pace; and no limitations in adapting or managing himself.

## II.     Third Party Statements

On July 15, 2016, a DDS employee conducted a telephone interview of plaintiff, Leon Glass (plaintiff's stepfather) and Arcelia Glass (plaintiff's mother). The DDS employee noted that plaintiff's voice was fast and pressured. Ms. Glass reported that plaintiff was so scared to talk on the phone, he would shake all day and be upset.

On November 20, 2016, Mr. Glass completed a third party statement. He confirmed that plaintiff could not concentrate long enough to get a job done and was unable to leave the house. Mr. Glass reported that plaintiff requires reminders to take medication and help determining what medication to take. If plaintiff lived by himself, he would not eat or take medication regularly.

Mr. Glass reported that because of plaintiff's fear of people and anxiety, he goes out only when forced to go to a doctor. Mr. Glass confirmed that plaintiff had difficulties understanding and completing tasks, and with memory and concentration.

On July 16, 2019, Ms. Glass completed a third-party function report. She noted that since plaintiff's hospitalization in 2016, his ability to concentrate diminished and his agoraphobia worsened. Other than for appointments, plaintiff stayed in his room at home and had very limited interaction even with family members. Ms. Glass reported that plaintiff's illness affected his understanding, memory, concentration and ability to follow instructions and complete tasks.

### III. ALJ Findings

The ALJ denied benefits at step five, finding that plaintiff was capable of performing work. In his order of March 5, 2020, the ALJ made the following findings:

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2021.
>
> 2. The claimant has not engaged in substantial gainful activity since April 18, 2016, the alleged onset date through September 25, 2018.
>
> 3. The claimant has the following severe impairments: schizoaffective disorder, panic disorder with agoraphobia, depression and social phobia.
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.
>
> 5. After careful consideration of the entire record, the undersigned finds that from April 18, 2016 through September 25, 2018, the claimant had the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations. He was able to understand, remember and carry out simple, routine, and repetitive tasks in a work environment free of fast paced production requirements, involving only simple, work-related decisions; with few, if any, workplace changes. He can have no interaction with the public. He can have frequent interaction with coworkers and supervisors.
>
> 6. The claimant is unable to perform any past relevant work.

7.  The claimant was born on June 4, 1969 and was 46 years old, which is defined as a younger individual age 18–49, on the alleged disability onset date.

8.  The claimant has at least a high school education and is able to communicate in English.

9.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

10.  Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

11.  The claimant has not been under a disability, as defined in the Social Security Act, from April 18, 2016, through the date of this decision.

Tr. at 450–59 (citations omitted).

## Standard Of Review

The Court must determine whether the Commissioner's decision is free from legal error and substantial evidence supports it. Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. (quoting Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007)). It requires "more than a scintilla, but less than a preponderance." Id. (quoting Lax, 489 F.3d at 1084). Evidence is not substantial if it is "overwhelmed by other evidence in the record or constitutes mere conclusion." Grogan v. Barnhart, 399 F.3d 1257, 1261-62 (10th Cir. 2005). To determine if substantial evidence supports the decision, the Court will not reweigh the evidence or retry the case, but will examine the record as a whole, including anything that may undercut or detract from the Commissioner's findings. Flaherty v. Astrue, 515 F.3d 1067, 1070 (10th Cir. 2007).

## Analysis

Plaintiff bears the burden of proving disability under the Social Security Act. See Ray v.

Bowen, 865 F.2d 222, 224 (10th Cir. 1989). The Social Security Act defines "disability" as the inability to engage in any substantial gainful activity for at least 12 months due to a medically determinable impairment. 42 U.S.C. § 423(d)(1)(A). To determine whether claimant is disabled, the Commissioner applies a five-step sequential evaluation: (1) whether claimant is currently working; (2) whether claimant suffers from a severe impairment or combination of impairments; (3) whether the impairment meets an impairment listed in Appendix 1 of the relevant regulation; (4) whether the impairment prevents claimant from continuing past relevant work; and (5) whether the impairment prevents claimant from doing any kind of work. See 20 C.F.R. §§ 404.1520, 416.920. If claimant satisfies steps one, two and three, he will automatically be found disabled; if claimant satisfies steps one and two, but not three, he must satisfy step four. If step four is satisfied, the burden shifts to the Commissioner to establish that claimant is capable of performing work in the national economy. See Williams v. Bowen, 844 F.2d 748, 751 (10th Cir. 1988).

Here, the ALJ denied benefits at step five, finding that plaintiff is capable of performing work with certain restrictions.

**I.     Weight Assigned To Treating Physician Opinions**

Plaintiff argues that the ALJ erred in giving little weight to the opinions of his treating physician, Dr. Geenens. A treating physician's opinion carries controlling weight if it is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record. Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir. 2003); 20 C.F.R. § 404.1527(c)(2); SSR 96-2p, Titles II And XVI: Giving Controlling Weight To Treating Source Medical Opinions, 1996 WL 374188, at *2 (S.S.A. July 2, 1996). Even if the ALJ does not give controlling weight to a treating physician's opinion, he must still give the opinion deference and weigh it using all of the factors set forth in the regulations.

Watkins, 350 F.3d at 1300; see SSR 96-2p, 1996 WL 374188, at *4. In particular, the ALJ must consider the following factors: (1) the length of the treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which relevant evidence supports the physician's opinion; (4) consistency between the opinion and the record as a whole; (5) whether the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. Watkins, 350 F.3d at 1301; 20 C.F.R. §§ 404.1527(c)(2-6). After considering the factors, the ALJ must give "good reasons" for the weight he gives the treating source opinion. Watkins, 350 F.3d at 1300; see 20 C.F.R. § 416.927. If the ALJ rejects the opinion completely, he must give specific, legitimate reasons for doing so. See Watkins, 350 F.3d at 1301 (decision must be sufficiently specific to make clear weight adjudicator gave to treating source medical opinion and reasons for that weight); see SSR 96-2p, 1996 WL 374188, at *5.

Plaintiff argues that the ALJ erred in giving "little weight" to the opinion of Dr. Geenens, his treating psychiatrist. Here, the ALJ assigned little weight to Dr. Geenens's opinion because (1) his opinion was inconsistent with his own records which note that plaintiff had "anxious moods but improved paranoia, rational thoughts, and no overt psychosis or mania," (2) the record contains "no treatment for the majority of last year, and the claimant reported he was doing better, sitting on the porch more and getting the mail and trash daily in mid-2017," and (3) his opinion was inconsistent with the "frequency, intensity and content of treatment" which had been mostly limited and conservative since plaintiff's initial hospitalization. Tr. 456. As explained below, these do not constitute "good reasons" for the weight which the ALJ gave Dr. Geenens's opinion. Watkins, 350 F.3d at 1300.

As to the consistency of Dr. Geenens's opinions with his own records, the ALJ noted that the medical records showed "improved paranoia, rational thoughts, and no overt psychosis or mania." Tr. 456. The ALJ did not specifically explain how this limited medical evidence was inconsistent with Dr. Geenens's opinion. Because of the varying nature of plaintiff's symptoms, the ALJ's reliance primarily on selected individual visits was misplaced. See Brief Of The Commissioner (Doc. #14) at 1 ("his condition waxed and waned"). From July of 2016 through September of 2018, Dr. Geenens examined plaintiff on some 26 occasions. At times, Dr. Geenens noted improvements in plaintiff's condition. Even so, Dr. Geenens never opined that plaintiff had improved to the point that he could sustain competitive employment. From July of 2016 through February of 2018, Dr. Geenens consistently diagnosed plaintiff with schizoaffective disorder and panic disorder with agoraphobia. In choosing to rely on isolated reports of improvement between individual visits, the ALJ impermissibly engaged in a "selective and misleading evidentiary review" of the entire medical record. Alexander v. Barnhart, 74 F. App'x 23, 27 (10th Cir. 2003). The ALJ did not adequately explain how Dr. Geenens's medical records were inconsistent with his opinion that plaintiff could not work because of his psychiatric conditions.

Next, the ALJ rejected Dr. Geenens's opinion because the record contains "no treatment for the majority of last year [i.e. from March of 2019 through March of 2020], and the claimant reported he was doing better, sitting on the porch more and getting the mail and trash daily in mid-2017." Tr. 456. The Commissioner concedes that the ALJ's statement is at least partially incorrect because the ALJ had records of plaintiff's visits with Dr. Geenens through at least November of 2019. Brief Of The Commissioner (Doc. #14) filed January 14, 2021 at 8–9. Even so, because the ALJ had previously noted that plaintiff was treated throughout 2019, the Commissioner suggests that the Court consider the ALJ misstatement simply as a "scrivener's error." Id. at 9.

While the Commissioner's explanation is plausible, it appears equally plausible—if not more plausible—that when the ALJ listed reasons for the weight which he gave Dr. Geenens's opinion, he did not recall plaintiff's treatment in 2019.  Indeed, in his third reason for discounting Dr. Geenens's opinion, he again referenced that the "frequency, intensity and content of [plaintiff's] treatment" had been mostly limited and conservative since plaintiff's initial hospitalization.  This suggests that the ALJ did not recall plaintiff's monthly visits with Dr. Geenens in 2019.  Tr. 456.  Because the ALJ did not acknowledge plaintiff's monthly visits with Dr. Gennens, the Court cannot uphold his rejection of Dr. Geenens's opinion based on the "frequency, intensity and content of treatment."  In addition, as the Appeals Council explained after the ALJ's initial decision, it is unclear how monthly visits with a psychiatrist and taking a variety of psychotropic medications is inconsistent with Dr. Geenens's opinion.  Tr. 541.  The ALJ did note that plaintiff engaged in various activities, but the ALJ again selected isolated reports over a 22-month period which, by themselves, are insufficient to give little weight to Dr. Geenens's opinion that plaintiff was disabled during the entire period.

In sum, the ALJ did not provide "good reasons" for the little weight which he assigned to Dr. Geenens's opinion.  <u>Watkins</u>, 350 F.3d at 1300.  Accordingly, the Court must reverse the decision of the Commissioner because he did not show that from April 16, 2016 through September 25, 2018, plaintiff could perform work in the national economy.[3]

**II.     Remedy**

The Court has discretion whether to remand the case for additional fact-finding or for an

---

[3]     Plaintiff also argues that the ALJ erred in the weight afforded to the opinion of Dr. Rosso and in evaluating various third party statements.  Because the Court reverses the Commissioner's finding that plaintiff was not disabled during the relevant time frame, it need not reach these additional arguments.

immediate award of benefits. See Ragland v. Shalala, 992 F.2d 1056, 1060 (10th Cir. 1993). In determining whether an immediate award of benefits is appropriate, the Court considers the length of time the matter has been pending and whether given the available evidence, remand would serve any useful purpose or would merely delay the receipt of benefits. Salazar v. Barnhart, 468 F.3d 615, 626 (10th Cir. 2006).

Here, plaintiff filed his application for benefits on July 1, 2016—nearly five years ago. DDS determined that at least since September 26, 2018 (the day after the first ALJ decision), plaintiff is disabled. For the period between April 18, 2016 and September 25, 2018, the ALJ has had two chances to conduct a proper disability determination. In both decisions, the ALJ found that plaintiff had satisfied the first four steps of the sequential evaluation process. The first remand on the unopposed motion of the Commissioner was based on essentially the same legal error as that noted above, i.e. the ALJ failure to give good reasons why he assigned little weight to the opinion of Dr. Geenens. See Tr. 540 (Appeal Council remanded because ALJ did not adequately evaluate treating source opinions of Dr. Geenens). As a result of this legal error, the Commissioner again has failed to satisfy his burden at step five. In these circumstances, a remand would serve no useful purpose. The record—and the subsequent DDS determination that plaintiff has been disabled since September 26, 2018—amply supports the conclusion that plaintiff also was disabled from April 18, 2016 through September 25, 2018. In particular, the Court notes that the triggering event for plaintiff's disabling psychiatric condition was leaving work in April of 2016, which eventually resulted in in-patient psychiatric treatment in June of 2016. See Tr. 493–95 (Ms. Glass testified that need for guardianship stemmed from plaintiff's mental condition in June of 2016 which required in-patient psychiatric treatment). In light of the Commissioner's failure—despite two opportunities—to satisfy his burden of proof at step five, and the protracted delay which has

resulted from his disposition of the proceedings, the Court finds that the judgment of the Commissioner should be reversed and remanded so that the Commissioner can award benefits for the period from April 18, 2016 through September 25, 2018.[4]

**IT IS THEREFORE ORDERED** that the Judgment of the Commissioner is **REVERSED** and **REMANDED to the Commissioner with directions to award plaintiff benefits for the period from April 18, 2016 through September 25, 2018**.

Dated this 6th day of May, 2021 at Kansas City, Kansas.

                                                   s/ Kathryn H. Vratil
                                                   KATHRYN H. VRATIL
                                                   United States District Judge

---

[4] See Salazar, 468 F.3d at 626 (remanding for award of benefits because application pending for more than five years and remand would serve no useful purpose); Ragland, 992 F.2d at 1060 (remanding for award of benefits because of Commissioner's "patent failure" to meet step five burden of proof and long delay); Frey v. Bowen, 816 F.2d 508, 518 (10th Cir. 1987) (remanding for award of benefits because application pending for more than six years, record had been fully and fairly developed and record as whole only supported conclusion claimant was disabled); Broadbent v. Harris, 698 F.2d 407, 414 (10th Cir. 1983) (remanding for award of benefits because Secretary had not sufficiently rebutted prima facie case of disability and substantial evidence does not support decision); see also Wilder v. Apfel, 153 F.3d 799, 801 (7th Cir. 1998) (after eight years, time "to bring the charade to an end"); Sisco v. U.S Dep't of HHS, 10 F.3d 739, 746 (10th Cir. 1993) (remanding for award of benefits; agency not entitled to adjudicate case ad infinitum until it correctly applies proper legal standard and gathers evidence to support its conclusion).